# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                 )

**ROBERT BREARLEY,**          )
**ROBERT L. SMITH, III,**      )
**and ACCESS WITH SUCCESS, INC.**  )
                                 )

       **Plaintiffs**          )
                                 )     **CIVIL ACTION NO.: 05-cv-10411RBC**

    **v.**                       )
                                 )

**CITY OF METHUEN,**         )
**MASSACHUSETTS**           )
                                 )

      **Defendant**         )
_____)

## PLAINTIFFS' ASSENTED TO MOTION FOR LEAVE
## TO FILE AMENDED COMPLAINT PURSUANT TO RULE 15 (a)

NOW COME the plaintiffs, Robert Brearley, Robert L. Smith, III and Access with Success, Inc., by and through counsel, who hereby respectfully move pursuant to Fed. R. Civ. P. 15(a) for leave to amend their Complaint by adding allegations of fact. As grounds for their motion, the plaintiffs state as follows:

1.     The Court ordered the plaintiffs to file the present motion by the close of business on Friday, June 24, 2005;

2.     The defendant's attorney has reviewed the proposed (and attached) *Amended Complaint and Jury Demand* and does not oppose the present motion, but reserves the City's right to challenge the substance of the *Amended Complaint and Jury Demand*.

3.     Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."

WHEREFORE, the plaintiffs respectfully request that their motion will be allowed.

Respectfully submitted,

The Plaintiffs,
ROBERT BREARLEY, et al.,

By their Attorneys,


/s/Nicholas S. Guerrera_____
Nicholas S. Guerrera, BBO#551475
Shaheen Guerrera & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
(978) 689-0800


## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail pursuant to Fed. R. Civ. P. 5.


Dated:6/22/05                          /s/Nicholas S. Guerrera_____
                                       Nicholas S. Guerrera

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____ )
                                         )
**ROBERT BREARLEY,**                     )
**ROBERT L. SMITH, III,**                )
**and ACCESS WITH SUCCESS, INC.**        )
                                         )
        **Plaintiffs**                   )
                                         )          **CIVIL ACTION NO.: 05-CV-10411RBC**
        **v.**                           )
                                         )
**CITY OF METHUEN,**                     )
**MASSACHUSETTS**                        )
                                         )
        **Defendant**                    )
_____ )

## AMENDED COMPLAINT AND JURY DEMAND

This is an action seeking injunctive, declaratory and equitable relief pursuant to Title II of

the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.,* Section *504* of the

Rehabilitation Act, *29 U.S.C.* § 794, Article 114 of the Massachusetts constitution, and

Massachusetts General Laws *c. 93 § 103.* The plaintiffs, ACCESS WITH SUCCESS, INC.,

ROBERT BREARLEY and ROBERT L. SMITH, III, through their undersigned counsel, bring

this cause of action against the CITY OF METHUEN, a municipal corporation, and as causes of

action allege as follows:

### PARTIES

1.  The plaintiff Access with Success, Inc., (AWS) is a non-profit corporation organized and

    existing under the laws of the Commonwealth of Massachusetts. Its members are able-

    bodied individuals and qualified individuals with disabilities as defined by the ADA. Its

    members include Mr. Scott M. Frotton, age 41.  He is a founding member of AWS. Mr.

Frotton has T7 paraplegia secondary to a spinal cord injury sustained in a construction site accident in 1998. He has a complete loss of sensory and motor function from his chest down. His condition is permanent. He always uses a wheelchair. Tammy Frotton is a founding member of AWS. She is not a disabled person. She is the wife of Scott Frotton. Amylee O'Beirne, age 24, is a founding member of AWS. She has had rheumatoid arthritis since early childhood. She frequently uses a wheelchair. Mr. Francis DeVito is a Korean War veteran and a member of AWS. In 1953, he was injured by a grenade and gunfire in an ambush attack while his Marine unit was on patrol in Korea. His wounds were such that it became necessary to amputate his left leg above the kneecap. He requires the use of ambulatory devices for mobility, including a prosthetic leg and a crutch, when necessary, in order to walk. Mr. Peter A. Spalluto, age 58, is a member of AWS. He is quadriplegic due to a swimming pool diving accident in 1966. Mr. Spalluto always uses a wheelchair. Raymond J. Aziz, age 62, is a member of AWS and a resident of the City of Methuen. He has a walking impairment due to diabetes. He requires the use of leg braces to walk. Norman P. Crescimano, age 42, is a member of AWS. He has multiple sclerosis and always uses a wheelchair. Mr. Frank Salafia, age 66, is a member of AWS. He is hearing impaired and has a loss of vision in one eye. Mr. Dino N. Theodore, age 44, is a member of AWS. He is paraplegic due to an accidental gunshot wound in 1981. He always uses a wheelchair. Felix Esposito is a member of AWS. He has a neurological disorder that requires him to use a wheelchair almost always. G. David Iverson is a member of AWS. He is paraplegic due to a gunshot wound he sustained in 1987. His condition is permanent. He always uses a wheelchair for ambulation. The individually named plaintiffs, Robert Brearley and Robert L. Smith,

III, also are members of AWS.  Mr. Brearley is paraplegic due to a porch collapse accident in 1980.  He always uses a wheelchair.  Mr. Smith always uses a wheelchair due to the combined effects of a pelvic fracture sustained in an accident in 2000 and muscular dystrophy. All of the above-named members of AWS are qualified individuals with disabilities within the meaning of the ADA and all other applicable federal and state statutes.

2.     AWS is a civil rights group organized by individuals with disabilities to advocate for the integration into society of disabled persons and equal access to all services, activities, programs, resources and facilities available to non-disabled persons. Its members are predominantly, but not exclusively, individuals with various physical disabilities impairing mobility, vision and hearing. One of the primary purposes of AWS is to assure that municipal programs and services and private places of public accommodation are accessible to, and usable by persons with disabilities. Title II of the ADA permits private individuals to bring lawsuits in which they can obtain court orders to stop discrimination by municipalities on the basis of disability.

3.     AWS and its members have suffered direct and indirect injury as a result of the defendant's actions or inactions as described herein. AWS also has been discriminated against because of its association with its members and their claims. The defendant's failure to comply with the ADA adversely affects the organizational purpose of AWS.

4.     The plaintiff, Robert Brearley, resides at   20 Calumet Avenue, Building 1, Apartment E, Methuen, Massachusetts 01844. Mr. Brearley relies completely upon a wheelchair for ambulation. He is a qualified individual with disabilities under the ADA and all other applicable federal and state statutes.

3

5.      The plaintiff, Robert L. Smith, III, resides at 200 Oakland Avenue, Methuen,

Massachusetts 01844.  Mr. Smith relies completely upon a wheelchair for ambulation.

He is a qualified individual with disabilities under the ADA and all other applicable

federal and state statutes.

6.      The defendant, City of Methuen is a municipal corporation incorporated as a town in

the Commonwealth of Massachusetts in 1725 and as a city in 1973. Upon information

and belief, Methuen owns, operates, leases and/or maintains the programs and services

offered by Methuen as well as the facilities, real properties and improvements which

are the subject of this action.

7.      The facilities owned, operated, leased and/or maintained by Methuen include, but are

not limited to, the city streets, sidewalks, curb cuts, curb ramps, libraries, City Hall

(Searles Building) and public safety headquarters. Upon information and belief,

Methuen has at least fifty employees.

8.       Prior to instituting the instant action, Mr. Brearley and Mr. Smith personally availed

themselves of Methuen's programs and services and visited the defendant's facilities,

including, but not limited to the city streets, sidewalks, curb cuts, and curb ramps and

were unable to access the same in a manner equal, comparable, or similar to a non-

disabled person to due to the defendant's lack of compliance with the ADA.

9.      Under Title II of the ADA, it is well settled that maintaining public sidewalks is a

service, program or activity of a city.  *Barden v. City of Sacramento*, 292 F.3d 1073,

1076 (9th Cir. 2002).

10.     The plaintiffs, Robert Brearley and Robert Smith, were denied full and equal access

to the subject programs, services, facilities and properties of the defendant. Mr.

Brearley and Mr. Smith desire to and intend to avail themselves of the programs and services of Methuen and intend to use or participate in the defendant's programs, facilities and properties in the future.

## JURISDICTION AND VENUE

11.   Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and §1343 in that this is an action arising under the laws of the United States and the defendant is subject to personal jurisdiction. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

12.   Venue is proper in this Court under 28 U.S.C. §1391; the claim having arisen in the District of Massachusetts.


## COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

13.   The plaintiffs repeat the preceding allegations as if fully set forth here.

14.   All events giving rise to this lawsuit occurred in the state of Massachusetts.

15.   On or about July 26, 1990, Congress enacted the ADA, which is codified at 42 U.S.C. §12101 *et seq.*

16.   Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the requirements of the ADA. Those regulations are codified at 28 C.F.R, Part 35 and 36. 28 CFR Part 35 implements subtitle A of Title II of the ADA, which applies to state and local governments.

17.   In Title II of the ADA, Congress provided that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be

denied the benefits of a public entity, or be subjected to discrimination by any such entity.

18.     Section 35.101 requires a public entity to make its programs accessible in all cases, except where to do so would result in a fundamental alteration in the nature of the program or in undue financial and administrative burdens.

19.     It is the burden of the public entity to prove that compliance would result in such fundamental alteration or financial burden. Further, any decision that compliance would result in alteration or burden must be made after considering all resources available for use in the funding of operation of service, program, or entity, and must be accompanied by a written statement of the reasons for reaching that conclusion. *28 C.F.R. §35.150(a) (3).*

20.      The City of Methuen has not and cannot meet this burden of justifying its discriminatory practices and acts.

21.     Title II of the ADA requires that a public entity, such as the defendant, take appropriate steps to ensure that communications with applicants, participants and members of the public with disabilities are as effective as communications with others. *28 CF R. §35.160(a).*

22.     The defendant has not met the requirements of Section 35.160 (a).

23.     Title II of the ADA requires a public entity, such as the defendant, to furnish auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in and enjoy the benefits of a service, program, or activity conducted by a public entity. *28 C.FR. § 35. 106(b) (1).*

24.     The defendant has not met the requirements of Section 35.106 (b)(1).

25. Title II of the ADA and *28* C.F.R. § *35.105* requires municipalities to complete a self evaluation process by January 26, 1993 of its services, policies, practices and effects thereof that do not comply with the ADA. Section 35.105 requires a public entity to evaluate its current policies and practices to identify and correct any which are inconsistent with the requirements of Title II and its implementing regulations.

26. The defendant, Methuen, has not completed an adequate self-evaluation.

27. Title II of the ADA and 28 C.F.R. § 35.105 required the defendant to develop a transition plan by July 26, 1992 where structural changes in its existing facilities needed to be undertaken to achieve program accessibility for all persons with disabilities, including the plaintiffs.

28. The defendant failed to develop an adequate transition plan and failed to implement an adequate transition plan.

29. Section 35.151 provides that those buildings that are constructed or altered by, on behalf of, or for the use of a public entity shall be designed, constructed, or altered to be readily accessible to and usable by individuals with disabilities if the construction was commenced after January 26, 1992.

30. Methuen has not met the requirements of Section 35.151.

31. Section 35.163(a) requires a municipality to provide information to individuals with disabilities concerning accessible services, activities, and facilities. Paragraph (b) requires the public entity to provide signage at all inaccessible entrances to each of its facilities that directs users to an accessible entrance or to a location with information about accessible facilities.

32. Methuen has not met the requirements of Section 35.163(a).

33.   The City's official web site is devoid of information useful to a disabled person.

34.   Section 35.160(a) requires a public entity to take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others.

35.   Methuen has not met the requirements of Section 35.160(a).  The City's official web site is devoid of information useful to a disabled person.

36.   Section 35.160 (b)(1) requires a public entity to furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity.

37.   Methuen has not met the requirements of Section 35.160 (b)(1).

38.   The defendant was required to have completed structural changes in its facilities no later than January 26, 1995. The defendant has failed to complete the required structural changes to achieve equal access to its programs, service, activities, facilities and properties.

39.   As a governmental and public entity charged with ensuring compliance with federal and state laws, Methuen has known for several years of its duties and obligations under Title II of the ADA. Despite this knowledge, Methuen has failed to comply adequately with the ADA's self-evaluation and transition plan requirements.

40.   Methuen has known for several years of its duties and obligations under Title II of the ADA to complete the necessary and required structural changes to its facilities. Methuen failed to complete the necessary and required structural changes to its facilities by January 26, 1995, as mandated by federal law.

41.   The defendant's failure to meet all of its obligations under Title II of the ADA including, *inter alia,* to complete a self-evaluation, to develop a transition plan for modification of existing facilities and to fully implement all structural modifications has denied, and continues to deny, the plaintiffs access to Methuen's programs, services and activities that are otherwise available to persons without disabilities.

42.   As a governmental and public entity, Methuen has subjected the plaintiffs to discrimination solely on the basis of their disabilities. Methuen directly participated in or acquiesced in the discriminatory conduct described herein.

43.   The plaintiffs were subjected to discrimination when they attempted to access the programs services, facilities and properties owned and/or operated by the City of Methuen. The plaintiffs continue to desire to utilize Methuen's programs and services as well as to return to the facilities and properties owned and/or operated by Methuen. They intend to do so and therefore will continue to be harmed and suffer discrimination by the defendant in the future.

44.   The plaintiffs have been unable to and continue to be unable to enjoy full and equal access to the benefits of the programs, services and facilities owned and/or operated by Methuen.

45.   In addition to not providing equal access to the programs and services offered by Methuen, the defendant, Methuen, is in violation of 42 *USC. §12181* and *28 C.F.R. § 36.302 et seq.* and is discriminating against the plaintiffs insofar as many Methuen streets lack proper curb cuts and/or curb ramps and many Methuen sidewalks contain obstacles which block or impede the accessible path of travel.

46.    Without the required curb ramps, sidewalk travel in Methuen is dangerous, difficult, and in some cases impossible for people such as the plaintiffs who use wheelchairs, electric scooters, and other mobility aids. Curb ramps allow people with mobility impairments to gain access to the sidewalks. Otherwise, individuals such as the plaintiffs are forced to travel in streets and roadways and are put in danger or are prevented from reaching their destination.

47.    The plaintiffs frequently have to place themselves in jeopardy of being hit by a car because they cannot use many sidewalks in Methuen.

48.    When streets and roads are newly built or altered, the ADA required installation of ramps wherever there are curbs or other barriers to entry from a pedestrian walkway. Likewise, when new sidewalks or walkways are built or altered, they must contain curb ramps or sloped areas wherever they intersect with streets or roads.

49.    Resurfacing a street or sidewalk is also considered an alteration.

50.    Over the past ten years, Methuen has altered many of its streets and sidewalks without installing curb cuts or curb ramps.

51.    The sidewalks in Mr. Brearley's immediate neighborhood along Merrimack Street in Methuen lack appropriate, accessible curb cuts and sidewalks that can be used while in a motorized wheelchair.

52.    On East Street from the bottom of the hill at Jackson Street all the way around to Broadway and at numerous street corners along Pleasant Street there are no accessible curb cuts and many sidewalks that can not be used by a person in a wheelchair.  Mr. Brearley frequently travels this route in his motorized scooter, sometimes as often as three times in a week.

53.    The Searles Building (which houses the City's offices) has some disabled-accessible features, but many of the City offices within the Searles Building are inaccessible to a person in a wheelchair.  There are programs and services offered at the Searles Building that the plaintiffs do not have access to because it would be a futile gesture for them to attempt to enter the building.

54.    The curb cuts are too steep and/or have broken pavement on Lisner Street, on Ridge Street, on Meadowbrook Road, on Lynnwood Avenue and on Gloucester Street.  Mr. Brearley frequently travels this route in his motorized scooter, sometimes as often as three times in a week.

55.    The curb cut at the intersection of Larchwood Street and East Street is too steep to get up and down in a wheelchair.  Mr. Brearley frequently travels this route in his motorized scooter, sometimes as often as three times in a week.

56.    At the crosswalk of East Street and Pleasant View Street the curb cut is too steep to get up and down in a wheelchair.   Mr. Brearley frequently travels this route in his motorized scooter, sometimes as often as three times in a week.

57.    At the corner of Davis Street and East Street, the curb cuts are too steep to get up and down in a wheelchair.   Mr. Brearley frequently travels this route in his motorized scooter, sometimes as often as three times in a week.

58.    At the corner of Pinewood Street and East Street, there is no curb cut.  Mr. Brearley frequently travels this route in his motorized scooter, sometimes as often as three times in a week.

59.    At McKinley Way and Jackson Street, the curb cut is too steep to get up and down in a wheelchair.   Mr. Brearley frequently travels this route in his motorized scooter, sometimes as often as three times in a week.

60.    At Dearborn Street and Jackson Street, the curb cut is too steep to get up and down in a wheelchair.   Mr. Brearley frequently travels this route in his motorized scooter, sometimes as often as three times in a week.

61.    At Brook Street and Jackson Street, there is no curb cut.  Mr. Brearley frequently travels this route in his motorized scooter, sometimes as often as three times in a week.

62.    At Wayside Street and Jackson Street, there is no curb cut.  Mr. Brearley frequently travels this route in his motorized scooter, sometimes as often as three times in a week.

63.    At East Street and Jackson Street, the curb cut is too steep to get up and down in a wheelchair on all four sides of the intersection.  Mr. Brearley frequently travels this route in his motorized scooter, sometimes as often as three times in a week.

64.    All along Route 110, part of which is also called East Street and part of which is also called Merrimack Street, there are broken sidewalks and an absence of ADAAG compliant curb cuts at pedestrian crossings.  Mr. Brearley travels this route frequently, at least once per week.

65.    In Methuen Square, the crosswalk lights are frequently, if not always, turned off, making it impossible for Mr. Brearley to obtain a pedestrian crossing signal to pass safely across Broadway.

66.   In front of the Nevins Memorial Library on Broadway, the curb cut is too steep to get up and down in a wheelchair.

67.   Mr. Brearley frequently patronizes the Nevins Memorial Library. Most recently he attended a seminar on gardening in April 2005.  He went there again on June 6, 2005 to read.  He intends to return to the Nevins Memorial Library.

68.   On his visits to Nevins Memorial Library in April and June, Mr. Brearley encountered barriers to wheelchair access including, but not limited to, a ramp at the main entrance that is too steeply pitched, a single glass door at the main entrance that is heavy and requires too much force for a person in a wheelchair to open, no tables or counters with sufficient leg space for a person in a wheelchair to pull under and read a book, an inaccessible toilet in the men's room (despite its marking and designation as accessible), and an insufficient turning radius in the men's room to maneuver an electric wheelchair.

69.   Mr. Brearley has also visited the City's public beach at Forest Lake in the past year. There is no wheelchair accessible ramp to and from the beach.  Mr. Brearley intends to return to Forest Lake when it is made wheelchair accessible.

70.   At the end of Jayson Road near the street where Mr. Brearley lives there is a public park known as Henry P. Schreunder Memorial Park.  There is no wheelchair access to the body of water in the Henry P. Schreunder Memorial Park.  Mr. Brearley frequently goes to this park.  He would like to be able to go fishing, as people who do not use wheelchairs are able to do.

71.   There is a public park at the Methuen Water Treatment plant where people frequently go to fish off of a wooden dock.  The dock is inaccessible to a person in a wheelchair.

13

Mr. Brearley frequently goes to this park.  He would like to be able to go fishing, as people who do not use wheelchairs are able to do.

72.     On June 6, 2005, Mr. Brearley visited the Quinn Public Safety Building for the purpose of inquiring about a gun permit.  The main entrance to the building has heavy double doors that require too much force for a person in a wheelchair to open without distress and inconvenience.  Once inside those doors, there is a hallway and another door that requires too much force for a person in a wheelchair to open without distress and inconvenience.  On information and belief, there are other inaccessible features in the Quinn Public Safety Building that will be alleged more fully upon inspection.  Mr. Brearley intends to return to the Quinn Public Safety Building.

73.     The sidewalks in Mr. Smith's immediate neighborhood on Oakland Avenue and on Lowell Street in Methuen lack appropriate, accessible curb cuts and sidewalks that can be used by a person in a motorized wheelchair.  Mr. Smith tries to use those sidewalks frequently.  He accompanies his wife on walks in the neighborhood, almost every night in the summertime or whenever weather permits.  They usually take their dogs out for walks.  Often, he has to travel on the road next to the sidewalks, because he would have to travel too far to get to a point in the sidewalk where a driveway provides a ramp off of the sidewalk.

74.     Lowell Street was repaved within the past three years, but the sidewalks were not accessible to people who use wheelchairs.  Mr. Smith tries to use those sidewalks frequently.  He accompanies his wife on walks in the neighborhood, almost every night in the summertime or whenever weather permits.  They usually take their dogs out for walks.  Often, he has to travel on the road next to the sidewalks, because he

would have to travel too far to get to a point in the sidewalk where a driveway provides a ramp off of the sidewalk.

75.     Oakland Avenue has been repaved within the past year, but the sidewalks were not made accessible to people who use wheelchairs.  Mr. Smith tries to use those sidewalks frequently.  He accompanies his wife on walks in the neighborhood, almost every night in the summertime or whenever weather permits.  They usually take their dogs out for walks.  Often, he has to travel on the road next to the sidewalks, because he would have to travel too far to get to a point in the sidewalk where a driveway provides a ramp off of the sidewalk.

76.     The sidewalks on Oakland Avenue are in poor condition and cannot be used by a person in a wheelchair.  Mr. Smith tries to use those sidewalks frequently.  He accompanies his wife on walks in the neighborhood, almost every night in the summertime or whenever weather permits.  They usually take their dogs out for walks.  Often, he has to travel on the road next to the sidewalks, because he would have to travel too far to get to a point in the sidewalk where a driveway provides a ramp off of the sidewalk.

77.     The sidewalks on Railroad Avenue and on Lowell Street are in poor condition and cannot be used by a person in a wheelchair.  Mr. Smith tries to use those sidewalks frequently.  He accompanies his wife on walks in the neighborhood, almost every night in the summertime or whenever weather permits.  They usually take their dogs out for walks.  Often, he has to travel on the road next to the sidewalks, because he would have to travel too far to get to a point in the sidewalk where a driveway provides a ramp off of the sidewalk.

78.     Upon information and belief, the plaintiffs allege that there are other violations with respect to programs, services and facilities owned, administered and/or operated by Methuen that will be more fully alleged upon discovery and further inspection.

79.     The City of Methuen did not make efforts required under the ADA to remove architectural barriers to the extent readily achievable, nor has the City of Methuen complied with accessibility standards to the maximum extent feasible.

80.     The defendant has also, by maintaining such barriers, failed to comply with the ADA and access requirements for areas of new construction or alteration.

81.     The actions and initiatives which the City of Methuen has failed to undertake in order to make the City's services and facilities accessible to persons with disabilities are actions and initiatives that would be readily achievable, required by law, and would greatly assist persons with disabilities at minimal expense to the City of Methuen.

82.     The City's conduct constitutes ongoing and continuous violations of the ADA and, unless enjoined from doing so, the defendant will continue to violate the ADA. Said conduct, unless enjoined, will continue to cause irreparable harm for which plaintiffs have no adequate remedy at law.

**WHEREFORE,** the plaintiffs demand judgment against the City of Methuen and request an injunction and declaratory relief pursuant to Title II of the ADA as follows:

a.      That the Court declare that the programs, services and facilities owned, operated and administered by Methuen, violate the ADA;

b.      That the Court enter an order directing Methuen to alter its programs, services and facilities to make them accessible to and useable by individuals with disabilities to the full extent required by Title II of the ADA;

    c.    That the Court enter an order directing Methuen to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Methuen to undertake and complete corrective procedures;

    d.    That the Court award damages, reasonable attorneys' fees, costs (including expert fees) and other expenses of suit, to the plaintiffs; and

    e.    That the Court will award such other and further relief as it deems necessary, just and proper.

## COUNT II- REHABILITATION ACT

83. The plaintiffs repeat the allegations of the preceding paragraphs as if set forth completely here.

84. Section 504 of the Rehabilitation Act provides:

"No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *29 U.S.C. §794.*

85. Section 504 creates a private right of action in favor of persons who have been subjected to illegal discrimination on the basis of a physical handicap or disability.

86. On information and belief, the City of Methuen administers, sponsors and operates programs, which receive federal financial assistance within the meaning of the Rehabilitation Act.

87. The plaintiffs, Brearley and Smith, are qualified handicapped individuals within the meaning of the Rehabilitation Act. The plaintiff AWS, includes members who are qualified handicapped individuals within the meaning of the Rehabilitation Act.

88. As stated in the foregoing paragraphs, the plaintiffs have been excluded from participation in or denied the benefits of the City's services, programs and activities and were otherwise discriminated against by the City of Methuen.

89.     The plaintiffs' exclusion, denial of benefits was by reason of their disabilities and physical handicaps.

90.     The plaintiffs will suffer substantial irreparable harm if the programs, services and activities held and operated by the City of Methuen are not made accessible as required under the Rehabilitation Act.

91.     Furthermore, the public interest strongly favors mandating accessibility of the City's programs and services.

**WHEREFORE**, the plaintiffs demand judgment against Methuen and request the following relief:

a.     That the Court declare that the programs, services and facilities owned, operated and administered by Methuen, violate the Section 504 of the Rehabilitation Act;

b.     That the Court enter an order directing Methuen to alter its programs, services and facilities to make them accessible to and useable by individuals with disabilities to the full extent required by the Rehabilitation Act;

c.     That the Court, in its discretion, award damages, reasonable attorneys' fees, costs (including expert fees) and other expenses of suit, to the plaintiffs as prevailing parties all as permitted under *29 USC §794a (b);* and

d.     That the Court will award such other and further relief as it deems necessary, just and proper.

**COUNT III - MASSACHUSETTS CONSTITUTIONAL AMENDMENT
ARTICLE 114 AND MASSACHUSETTS EQUAL RIGHTS LAW, G.L. C. 93 §103**

92.     The plaintiffs, Brearley and Smith, repeat the allegations of the preceding paragraphs as if set forth completely here. All events giving rise to this lawsuit occurred within the Commonwealth of Massachusetts.

93.     Article CXIV of the Amendments of the Constitution of the Commonwealth of Massachusetts states, "No otherwise qualified handicapped individual shall, solely by

reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity in the Commonwealth."

94.    Massachusetts General Laws c. 93, § 103 (b) permits a person whose rights under Article CXIV of the Amendments of the Constitution of the Commonwealth of Massachusetts have been violated to "commence a civil action for injunctive and other appropriate equitable relief, including, but not limited to, the award of compensatory and exemplary damages."

95.    The plaintiffs, Brearley and Smith, have been excluded from fully participating in the municipal services and facilities made available by the City of Methuen to the general public.

96.    The plaintiffs, Brearley and Smith, have been denied the benefits afforded to non-disabled citizens and they have been subject to ongoing discrimination by the defendant solely by reason of their disability as prohibited by Article CXIV of the Massachusetts Constitution and G.L. c. 93 § 103.

97.    The plaintiffs, Brearley and Smith, have been repeatedly distressed and inconvenienced by the discriminatory actions of the City of Methuen, including its failure to remove access barriers to persons with mobility disabilities within Methuen and its failure to modify its policies and procedures to accommodate disabled citizens such as the plaintiffs.

98.    The plaintiffs' constitutional right to be free from discrimination in the Commonwealth of Massachusetts has been and continues to be violated by the defendant and they are therefore entitled to an award of compensatory and exemplary

damages, reasonable attorneys' fees and costs of litigation in an amount to be
determined by the Court.

99.     The plaintiffs filed Charges of Discrimination in the Massachusetts Commission

Against Discrimination as a procedural prerequisite to the filing of this Count III in

Court as required by *Varad v. Barshak*, 93 Fed. Appx. 255 (1st Cir. 2004).  They have

requested that the MCAD dismiss their claims for judicial determination by this

Court.  The MCAD dismissed their claims for judicial determination on March 24,

2005.

     **WHEREFORE,** the plaintiffs, Brearley and Smith, pray the Court's judgment on Count
III of their Complaint.


## JURY DEMAND


     The plaintiffs demand a trial by jury on Count III.

                              Respectfully submitted,

                              The Plaintiffs, Robert Brearley and Robert
                              L. Smith, III, et al.,

                              By their Attorney,


                              _____
                              Nicholas S. Guerrera, BBO# 551475
                              Shaheen Guerrera & O'Leary, LLC
                              Jefferson Office Park
                              820A Turnpike Street
                              North Andover, MA 01845
                              (978) 689-0800

Dated: June 22, 2005

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail pursuant to Fed. R. Civ. P. 5.

Dated: June 22, 2005                                    _____

Nicholas S. Guerrera